HALL, J.,
concurring in part and dissenting in part.
I agree with the majority that the Montana UCC’s four-year statute of limitations applies and that the district court improperly granted summary judgment as to breach of contract claims accruing on -or after January 11, 2003. I do not agree, however, that Laidlaw’s duty to promote and facilitate Edulog’s business under Section 2.3.3 of the Agreement survived the expiration of the exclusive license.
Section 2.2 of the Agreement explicitly conditions Laidlaw’s exclusive license on the tei-ms of Section 2.3 of the Agreement, which includes the duty to promote Edu-log’s software. Section 2.1 of the Agreement places no limitations on Laidlaw’s perpetual non-exclusive license. If Section 2.3 of the Agreement were to apply to both the non-exclusive license and the exclusive license, there would- be no need to include the express limitation in Section 2.2. It seems unlikely that the parties would draft two adjacent provisions, include an express limitation in just one provision, yet intend that that limitation would apply to both provisions. It also seems unlikely that the parties would see the need to expressly cross-reference a duty to promote in the context of a five-year exclusive license but would omit such a reference in the context of creating the same duty in perpetuity.
All of the provisions of Section 2.3 appear compatible only with an exclusive arrangement between Edulog and Laidlaw. Section 2.3.1 refers to “Retention of Rights by LMI During the Currency of Exclusive License” and refers only to Section 2.2 of the Agreement. Section 2.3.2 (the “no contact” duty referenced by the majority) provides Laidlaw the exclusive right to market to its own customers and limits Edulog’s ability to contact Laidlaw’s customers directly. This provision only makes sense if Laidlaw has an exclusive license to market Edulog’s software. Once the exclusive license expires, Edulog is *745 free to provide its software to competing school bus providers, who in turn would be free to contact Laidlaw’s customer base.
The mutual promotion and facilitation duties in Section 2.3.3 itself make little sense if, under the perpetual non-exclusive license, Edulog may freely license its software to Laidlaw’s competitors. Section 2.3.3 obligates (1) Edulog and Laidlaw to work together to minimize potential conflicts and define respective markets; (2) Edulog to use its best efforts to promote Laidlaw bus services; (3) Laidlaw to use its best efforts to promote Edulog software; and (4) both parties to ensure that employees and contractors do not contravene the Agreement. Once Edulog begins serving Laidlaw’s competitors — who presumably would attempt to infiltrate Laid-law’s market — Edulog loses any real ability to insulate Laidlaw from competition. If Edulog is unable to meaningfully fulfill the obligations set forth in 2.3.3 upon the expiration of the exclusive license, it seems unlikely that the parties would have intended for Laidlaw to actively promote Edulog software in perpetuity. ■
The most reasonable interpretation of the Agreement is that the duty to promote in Section 2.3.3 only applies for the duration of the exclusive license set forth in Section 2.2. I therefore dissent in part.